TOWN OF DEDHAM *vs.* CITY OF NEWTON.

Norfolk.    October 7, 1946. — November 7, 1946.

Present: FIELD, C.J., DOLAN, RONAN, WILKINS, & SPALDING, JJ.

*Settlement. Needy Person. Public Welfare. Statute,* Retroactive.

St. 1918, c. 257, § 299, amending St. 1911, c. 669, § 1, Fifth, by adding to the military or naval services therein described as a basis for determining settlement, such services in "any war between the United States and any foreign power," as well as St. 1919, c. 333, § 5, were retroactive, and applied to one who had enlisted in the United States navy before the declaration of war on April 6, 1917, served in that war, and was discharged in 1920 with his service "credited" to Massachusetts.

One, who enlisted in the United States navy in 1915 when he was a resident of Quincy, served in World War I and was discharged in 1920

with his service "credited" to Massachusetts, gained a settlement in Quincy under the provisions of St. 1911, c. 669, § 1, Fifth, as amended by St. 1918, c. 257, § 299, and appearing in St. 1919, c. 333, § 5.

A military settlement gained in a certain municipality under St. 1911, c. 669, § 1, Fifth, as amended by St. 1918, c. 257, § 299, and appearing in St. 1919, c. 333, § 5, was a "new settlement" within the terms of St. 1911, c. 669, § 4, as amended by St. 1916, c. 316, § 1, and after the effective date of St. 1918, c. 257, § 299, a former settlement in another municipality was not preserved.

CONTRACT. Writ in the Superior Court dated June 1, 1943.

The case was heard by *Kirk*, J.

*R. C. Thulin*, for the city of Newton.

*J. H. Burke, Jr.*, Town Counsel for the town of Dedham.

WILKINS, J. This action of contract to recover for relief furnished to Joseph J. Hale, his wife, and their seven minor children is based upon an alleged settlement in the defendant city. G. L. (Ter. Ed.) c. 117, § 14, as amended. The answer contained a denial and alleged a settlement in the city of Quincy. The case was heard upon a statement of agreed facts which meets the requirements of a case stated. G. L. (Ter. Ed.) c. 231, § 126. The judge made a finding for the plaintiff, which was in effect an order for judgment. *Edinburg* v. *Allen-Squire Co.* 299 Mass. 206, 207. *Boston Five Cents Savings Bank* v. *Boston,* 318 Mass. 183, 184. *Union Old Lowell National Bank* v. *Paine,* 318 Mass. 313, 315. The defendant appealed.

Joseph J. Hale was born October 18, 1895, in Quincy. From 1904 to October 3, 1911, he lived with his parents in Newton. Thereafter he lived with them in Brookline until 1914, when they all moved to Quincy. On October 18, 1916, Hale's twenty-first birthday, his father was registered as a voter in Quincy, where he continued to reside through 1919. On July 22, 1915, Hale, then a resident of Quincy, enlisted in the United States navy. His service in the World War is "credited" to Massachusetts. On July 21, 1920, at the expiration of his enlistment, he was honorably discharged at Philadelphia, Pennsylvania, and was allowed mileage to Newton. From June to August, 1920, Hale's parents "had board and room . . . in a boarding and room-

ing house" in Newton. Hale was at this house with his parents "for two or three days right after his discharge from the navy . . . and then he went away without making any statement as to his purpose, and did not return." In August, 1920, the parents moved to Brookline, and Hale lived with them there for about a year and a half. Thereafter he lived in various cities and towns in this Commonwealth for periods of less than five years. In 1924 he married Natalie Canning of Newburyport. On August 30, 1940, he moved to Dedham, where he was during the period from August 31, 1940, through September 1, 1942, when the relief was furnished for which reimbursement is now sought.

It is undisputed that Hale had a settlement in Newton [1] unless as a result of his navy service he acquired a settlement elsewhere. The defendant contends that Hale acquired a settlement in Quincy under various statutes now to be found in G. L. (Ter. Ed.) c. 116, § 1, Fifth, as amended by St. 1943, c. 455, § 13. By St. 1911, c. 669, § 1, as amended by St. 1918, c. 257, § 299, which added the italicized words quoted below, it was provided: "Legal settlements may be acquired in any city or town in the following manner and not otherwise: . . . Fifth, A person who enlisted and was mustered into the military or naval service of the United States, as a part of the quota of a city or town in this commonwealth under any call of the president of the United States during the war of the rebellion *or any war between the United States and any foreign power,* or who was assigned as a part of the quota thereof after having enlisted and been mustered into said service, and who served for not less than one year, or who died or became disabled from wounds or disease received or contracted while engaged in such service, or while a prisoner of the enemy, and his wife or widow and minor children shall be

---

[1] Hale's father lost his settlement in Newton October 3, 1916, five years from the date he moved away. St. 1911, c. 669, § 4. See St. 1916, c. 316, § 1. See now G. L. (Ter. Ed.) c. 116, § 5, as amended. Hale's settlement then followed that of his mother, who retained her settlement in Newton. St. 1911, c. 669, § 1, First, Second, Third. See now G. L. (Ter. Ed.) c. 116, § 1, First, Second, Third. *Brookfield* v. *Holden,* 247 Mass. 577, 579. *Treasurer & Receiver General* v. *Boston,* 255 Mass. 499, 503.

deemed thereby to have acquired a settlement in such place; and any person who would otherwise be entitled to a settlement under this clause, but who was not a part of the quota of any city or town, shall, if he served as a part of the quota of the commonwealth, be deemed to have acquired a settlement in the place where he actually resided at the time of his enlistment. . . ."[1]

The foregoing statute had its origin, after the close of the civil war, in St. 1865, c. 230, § 1; St. 1868, c. 328, § 3; St. 1870, c. 392, §§ 3, 5; and St. 1871, c. 379, § 2. See *Brockton* v. *Uxbridge*, 138 Mass. 292, 296. These statutes did not require that the soldier at the date of enlistment and muster into the service in the war of the rebellion should have been actually credited to a municipality under an existing law as a part of some quota which it was then liable by law to furnish under a previous requisition for troops, but it was sufficient if at any time the soldier was counted as a man serving to the credit of the municipality, although he may have enlisted before any legal obligation was imposed upon municipal corporations as such. See *Bridgewater* v. *Plymouth*, 97 Mass. 382, where it was said at page 390, "We think that the term quota was not used in any legal or technical signification, but according to its natural sense and import, to designate the proportion or share of the common burden which from the beginning belonged to each place. The legislature intended the act to embrace every man who at any period served and went to make up the quota, although his service may have begun and ended before the quota was ascertained, or even before it was fastened by the statute as a legal obligation upon the respective towns and cities. Every soldier who was

---

[1] By St. 1919, c. 333, § 5, there was added to clause Fifth: "Any person who was inducted into the military or naval forces of the United States under the federal selective service act, or who enlisted in said forces in time of war between the United States and any foreign power, whether as a part of the quota of this commonwealth or not, shall, subject to the same proviso, be deemed to have acquired a settlement in the place where he actually resided in this commonwealth at the time of his induction or enlistment." *Cambridge* v. *West Springfield*, 303 Mass. 63.

By St. 1922, c. 177, there was struck out the provision that a veteran must have served for one year, or have been wounded or disabled in service or while a prisoner of the enemy.

eventually credited to any municipality as a part of its quota, rendered to it the public service in return for which the privileges of a legal settlement therein have been conferred by the act under consideration. The same benefit has been received by the town, and the same rights were given by the statute, whatever may have been the date of the enlistment and mustering into the army."

It is the defendant's precise contention that Hale acquired a settlement in Quincy by reason of enlistment and subsequent service throughout the war "as a part of the quota of the commonwealth." This last quoted phrase is synonymous with the agreed fact that his war service "is credited to the State of Massachusetts." See *Bridgewater* v. *Plymouth*, 97 Mass. 382, 390; *Boston* v. *Mount Washington*, 139 Mass. 15, 16. The mere fact that Hale's enlistment was in time of peace and preceded the declaration of war on April 6, 1917, did not prevent his gaining a settlement in Quincy. See *Boston* v. *Mount Washington*, 139 Mass. 15. As a general proposition it has been stated that "Statutes relating to the settlement and support of paupers are prospective and not retroactive in operation unless a contrary intent is made plain by unequivocal words or necessary implication." *Brockton* v. *Conway*, 278 Mass. 219, 223. We think, however, that such a contrary intent clearly appears from clause Fifth, as appearing in St. 1919, c. 333, § 5.[1] It was expressly held that there was a retroactive effect to clause Fifth, as it stood in St. 1878, c. 190, § 1, Tenth, and in Pub. Sts. c. 83, § 1, Eleventh. *Boston* v. *Mount Washington*, 139 Mass. 15, 16. See, as to St. 1870, c. 392, §§ 3, 5, *Fall River* v. *Taunton*, 150 Mass. 106. And clause Fifth undoubtedly had a similar retroactive effect in St. 1911, c. 669, § 1, as to soldiers and sailors who had served in the civil war. The plaintiff nevertheless urges that under St. 1918, c. 257, § 299, as amended, the same is not true of the World War service of Hale. We cannot adopt this argument. It is our holding that as Hale served in such a way that the Commonwealth had the benefit of

---

[1] These statutes became effective February 1, 1921. St. 1920, c. 2.

his service, it was enough to confer upon him the reciprocal benefit of the settlement contemplated by the statute. See *Sheffield* v. *Otis,* 107 Mass. 282, 284–285; *Brockton* v. *Uxbridge,* 138 Mass. 292, 296; *Boston* v. *Mount Washington,* 139 Mass. 15, 16. That contemplated settlement was in Quincy, the city where he resided at the time of his enlistment.

The plaintiff further argues that it is entitled to prevail by reason of St. 1911, c. 669, § 4, as amended by St. 1916, c. 316, § 1, which read: "A person who, after the passage of this act, is absent for five consecutive years from the city or town in which he had a settlement shall thereby lose his settlement. . . . But the settlement existing on August twelfth, nineteen hundred and sixteen, of soldiers and their dependents eligible to receive military aid and soldiers' relief under existing laws shall continue in force while said soldiers or dependents are actually residing in the commonwealth until a new settlement is gained in another city or town in the manner heretofore prescribed; and any settlement of such soldier or dependent heretofore lost under the provisions of this section is hereby revived." But St. 1911, c. 669, § 1, Fifth (and as later amended by St. 1918, c. 257, § 299), and St. 1911, c. 669, § 4, as amended by St. 1916, c. 316, § 1, must be read together. See now G. L. (Ter. Ed.) c. 116, §§ 1, Fifth; 5. *Commonwealth* v. *Boston,* 316 Mass. 410. The result is that the soldier or sailor by gaining a military settlement under clause Fifth has gained a new settlement "in the manner heretofore prescribed," and that St. 1916, c. 316, § 1, did not preserve the Newton settlement of Hale after the effective date of St. 1918, c. 257, § 299.

Two cases arising under G. L. c. 116, § 5, as amended by St. 1926, c. 292, are relied upon by the plaintiff, but are distinguishable. In *Brockton* v. *Conway,* 278 Mass. 219, which did not concern a military settlement, it was recognized, as shown in a sentence from that opinion quoted above, that a settlement statute would have a retroactive effect if its language clearly indicated such an intent. In *Lexington* v. *Commonwealth,* 279 Mass. 571, it was held

that where a sailor had lost both his ordinary and his military settlement in Revere by absence for more than five years from Revere and by failure to reside in the Commonwealth, his military settlement was not revived by St. 1926, c. 292, which (unlike St. 1916, c. 316, § 1) contained no provision for the revival of lost settlements. In the case at bar we are concerned solely with the question whether Hale had acquired a military settlement in Quincy by virtue of St. 1911, c. 669, § 1, Fifth, as amended by St. 1918, c. 257, § 299, and not with a controversy as to whether he had lost a military settlement and later reacquired it.

*Judgment for the defendant.*