DANA E. AYER *vs.* ROBERT HARRIS.

Cumberland.    Opinion April 1, 1926.

*The findings by a single Justice in a trial of a cause without a jury, held to be findings on questions of fact supported by the evidence, and not rulings upon questions of law subject to exceptions.*

In the instant case the claim of title by adverse possession, advanced at the trial by counsel for the plaintiff, was eliminated by the plaintiff's testimony that he did not claim beyond the true line of his property, and had no intention of claiming any land not included in his deed.

On exceptions.    An action of trespass quare clausum involving the line between two adjoining lots of real estate one of which the plaintiff is the owner and the defendant the owner of the other.

The general issue was pleaded and the cause tried by the presiding Justice without a jury the right of exceptions being reserved.    To certain findings by the court defendant entered exceptions contending that such findings were erroneous rulings on questions of law. Exceptions overruled.

The case is sufficiently stated in the opinion.

*Cram & Lawrence and A. E. Neal,* for plaintiff.

*Frank H. Haskell,* for defendant.

SITTING:   WILSON, C. J., PHILBROOK, DUNN, DEASY, STURGIS, BARNES, JJ.

STURGIS, J.    This is an action of trespass quare clausum, involving the southeasterly bounds of the northwesterly half of lot No. 35 in

the sixth division of lots in the town of New Gloucester. The case was heard by the Judge, without a jury, but with right of exceptions reserved. The judgment was for the plaintiff, and the defendant presents five exceptions to what he terms the rulings and findings of the court.

In cases heard by the court without a jury, the right of exception is limited to rulings upon questions of law, *Prescott* v. *Winthrop*, 101 Maine, 236, which include only opinions, directions and judgments upon questions of law; and do not include such opinions, directions or judgments as are the result of evidence, or the exercise of judicial discretion. *Pettengill* v. *Shoenbar*, 84 Maine, 104. *Dunn* v. *Kelley*, 69 Maine, 145.

The findings of fact by the Justice hearing the case, if there is any evidence to support them, are conclusive, and exceptions do not lie. *Viele* v. *Curtis*, 116 Maine, 328. *Investment Co.* v. *Palmer*, 113 Maine, 397. *Lunt* v. *Stimpson*, 70 Maine, 250. *Mosher* v. *Jewett*, 63 Maine, 84. *Randall* v. *Kehlor*, 60 Maine, 37.

In the light of these well-settled rules, an examination of this case shows sufficient evidence to warrant the findings of the presiding Judge, and discloses no errors in his rulings upon questions of law.

The first exception reserved is to a statement made by the Justice in his finding, that, "reduced to its lowest terms, the right of the plaintiff to recover damages for acts alleged to have been done by the defendant, depends upon the location upon the face of the earth of the line crossing lot No. 35 from west to east, and delimiting in a southerly direction the northerly half of said lot."

There is no error in this statement. The plaintiff claims title to the northwest half of lot 35 through mesne conveyances running back to a deed from Gideon Dawes to Charles Dawes, dated January 6, 1838, which described the property as "one half of Lot No. 35 in the Sixth Division of Lots in said New Gloucester, being the northwesterly half of the lot." His predecessor in title, Zavier Lemay, conveyed, however, to him, on June 2, 1913, by the following more specific description: "Commencing at the westerly corner of land formerly owned by John M. Ayer, thence running in an easterly course by land formerly owned by said Ayer, thence by same course by land now or formerly owned by the Staples heirs, to the town Line, thence on the town Line in a northerly direction to land formerly owned by John M. Ayer, thence in a westerly direction by the land

of John M. Ayer to the land formerly owned by the Staples heirs to the Range Way line, thence in an easterly course to the first mentioned bounds, containing thirty acres more or less."

The "land now or formerly owned by the Staples heirs," named as the second bound in this Lemay deed, it appears, is now the property of the defendant, he having acquired title to it by mesne conveyances running back to a deed from Nathaniel Larrabee to Charles Staples, dated January 2, 1928, containing a description of the following tenor:

"Beginning at Danville line at the Southeast corner of Gideon Dawes' land, thence on said Dawes' land forty eight rods & one half to John Bragdon's land, thence on said Bragdon's line twenty four rods to a ledge of rocks, thence along at the foot of said ledge forty eight rods and one half a rod to Danville line, thence on said Danville line seven and one half rods to the first mentioned bound, containing four Acres and one eighth of an Acre more or less." The true location of the northwest line of this land of the Staples heirs, therefore, marks the southeasterly extent of the plaintiff's land. *Murray* v. *Munsey*, 120 Maine, 148.

In support of his claim to title and actual possession of the land upon which it is alleged the trespass was committed, the plaintiff offered a chalk of a survey and plotting of part of lot 35, with the easterly bounds of the lot marked by the town lines between New Gloucester and Danville and Durham, which adjoin New Gloucester on the east. Robert F. Chandler, the surveyor, delineated upon his chalk what he found to be the location of the divisional line between the "land of the Staples heirs" and the northwest half of lot 35. His location was made by starting at what was admitted by both parties to be the southwest corner of Gideon Dawes' land, and thence running northeasterly on the course of pieces of ancient stone wall, along the line marking the joining of tilled land with wood-lot, and thence through the woods to the easterly line of lot 35, which was also the town line. Reversing his course to the point of beginning, he plotted the other lines of the land of the Staples heirs according to the Larrabee deed to Charles Staples. It is to this line that the plaintiff claims title, and to which, by the testimony of several witnesses, he offered evidence of his actual possession and that of his predecessors in title. His counsel advanced at the trial a claim of title by adverse possession, but the plaintiff himself eliminated this

element from the case by his testimony that he did not claim beyond the true line of his property, and had no intention of claiming any land not included in his deed. *Borneman* v. *Milliken*, 116 Maine, 76. *Preble* v. *Railroad Co.*, 85 Maine, 260. The plaintiff's only claim is under his legal title to the northwest half of lot 35, which he says extends southeasterly to the line located by his surveyor.

The defendant accepted this issue, and presented his defense in the form of an attack upon the Chandler line, and a presentation of a survey made by one John Bartlett, who located the "land of the Staples heirs" to the northwest of the location found by Mr. Chandler, with the result that the division line between the plaintiff's land and the defendant's "Staples lot" would, according to his survey, be beyond and to the northwest of any acts of trespass claimed. This line, the defendant claimed, marked the southeasterly limits of the plaintiff's land, and was the northwesterly bounds of his own property. To it he claimed title and right of possession, and admitting the cutting of hay and wood on, and some crossing by teams over, the land between the Chandler line and Bartlett line, justified these acts under this claim of title to his surveyor's line.

In the light of the foregoing contentions of the parties, and the evidence each offered in support of the same, the statement of the presiding Justice, to the effect that the right of the plaintiff to recover, depends upon the location of the line crossing lot No. 35 from west to east, and delimiting in a southerly direction the northerly side of said lot, was strictly in accord with the issue presented by the evidence. It is proper to note that this is a statement of fact rather than a ruling of law, and is not exceptionable.

The defendant's second exception is to a statement of the trial Judge, which in the exception is interpreted to be a ruling that where each party claims a different line to be the boundary line between their adjacent lots, "one must be selected." We do not think the interpretation placed upon this statement by the defendant is fully justified by the language used by the court. Calling attention to the fact that each party at the trial pointed out a line claimed by them respectively to be the true line marking the southeasterly bounds of the northwesterly half of lot 35, and that abundant evidence was furnished in support of the respective contentions, the judge commented upon the inconsistencies and seemingly unreasonable conditions involved in an acceptance of either line, and then said,

"but it is nowhere suggested that either one or the other of these two lines is not in fact the true one, and one must be selected." We have outlined the positions taken and contentions presented by the parties in our discussion of the first exception. The plaintiff insistently urged that the line run by his surveyor was the true southeasterly line of his property where it adjoined that of the defendant's. He showed, and the defendant admitted, acts which were trespasses upon the plaintiff's land, if the plaintiff's claim was established. With equal insistence the defendant justified his admitted acts, upon the ground that the northwest line of his property, which was also the southeast line of the plaintiff's land, was located as found by his surveyor. No evidence of any other location of this dividing line in controversy was offered by either party. If this second exception was to a ruling of law, which it is not, it is fully answered, we think, by the academic principle of law that findings must be based upon the evidence in the case, and in accordance with the issues presented by the pleadings and the evidence.

The justice concluded his findings with the statement, that he "finds as a matter of fact, in consequence of the effect of what seems to be a fair preponderance of evidence supporting it, that the line substantially as claimed by the plaintiff is, as between the two contended for, the true line in the establishment of the southerly limit of the land in controversy owned by the plaintiff"; and commenting upon the admission by the defendant of the acts complained of, rendered judgment for the plaintiff, and assessed damages. The last three exceptions presented are directed to this final conclusion, and are grounded upon the argument that there is no evidence to support the facts upon which the judgment is based, and that the only inference to be drawn from the facts proven negatives the plaintiff's claim.

It is now a settled rule of law in this court, that where there is no evidence to support the findings of a judge hearing a case without a jury, with right of exceptions reserved, or when only one inference can be drawn from the facts, and that inference does not support the judgment, the finding is an erroneous decision of the legal conclusions to be drawn from the evidence, and is an exceptionable error in law. *Investment Co.* v. *Palmer*, 113 Maine, 397. *Chabot & Richard Co.* v. *Chabot*, 109 Maine, 403. *Morey* v. *Milliken*, 86 Maine, 464. But a careful reading of the evidence and study of the plans sent up and made a part of the bill of exceptions, convinces us that this rule has

no application to this case.  There was probative value in the testimony offered by the plaintiff.  Evidence of long use and occupation in accord with the line which the plaintiff claims, is found in the location of walls and the demarcation of woodland from mowing field and tillage land.  The call for the "Danville line" as a part of the description of the point of beginning in the defendant's deed is not conclusive.  It was the duty of the sitting Judge to consider the inconsistency arising from the use of this descriptive term, in the light of other evidence offered in the case, and if satisfied by the weight of the evidence that the call for the "Danville line" was erroneous, to reject it.  *Jones* v. *Buck*, 54 Maine, 304.  *Abbott* v. *Abbott*, 51 Maine, 575.  *Linscott* v. *Fernald*, 5 Greenleaf, 496.

The evidence was conflicting, but there was some evidence in support of the plaintiff's contention, and inferences favorable to his claim might be drawn.  The weight of the evidence was a matter for the presiding Judge, and it is not open to us to revise his conclusion as to the weight that may be given to it as matter of fact. The weight or the sufficiency of the evidence lies with the tribunal selected by the parties.  We think the record discloses evidence upon which, if submitted to a jury, they could legally find a verdict for the plaintiff upon the questions in issue, and cannot, therefore, under the rule stated in *Pettengill* v. *Shoenbar*, 84 Maine, 104, sustain these three latter exceptions to the decision of the presiding Judge, who, in reference to this matter, has been substituted for the jury.

*Exceptions overruled.*